Evelyn CORTLANDT, Plaintiff,

v.

E. F. HUTTON, INC., Henry P. Perrine,
Winifred Shank, and Michael
Bernstein, Defendants.

76 Civ. 2373 (CBM).

United States District Court,
S. D. New York.

May 23, 1979.

Grossman & Swetnick by Harry Grossman, New York City, for plaintiff.

Lewis H. Rosenbaum, New York City, for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

MOTLEY, District Judge.

This action by a securities trader and former customer of defendant E. F. Hutton & Co., Inc. (Hutton), was brought under the Securities Exchange Act of 1934, to redress alleged violations of Section 10(b) of that act, Rule 10b-5, and Section 206 of the Investment Advisers Act of 1940 ("the 1940 Act"). The individual defendants are employees of Hutton with whom plaintiff did business.

The case came on for trial before a jury on January 30, 1978 and the trial continued for two days thereafter before ending with the declaration of a mistrial, on motion of the defendant, on February 1, 1978. The three days of trial time were consumed by the examination and cross-examination of the plaintiff, Evelyn Cortlandt. Subsequently, it was stipulated by the parties that all issues were to be decided by this court on the basis of the evidence taken during the aborted trial, with the plaintiff's case to consist of her testimony given in court before the interruption of the proceedings. Thereafter, defendants moved to dismiss the action on the basis of plaintiff's case, on the ground that she had failed to meet the requirements of proof in support of a charge of securities fraud. This motion is granted.

### I. FACTS.

Plaintiff alleges that in September of 1974 she walked into the offices of E. F. Hutton & Co., Inc. (Hutton) and spoke with the manager thereof, Henry P. Perrine, a defendant herein, about the possibility of transferring existing margin accounts, which she then maintained with other securities brokers, to Hutton. At trial, she testified that she in fact opened a margin account with Hutton at that time.

Plaintiff alleges, and testified at trial, that she was induced to establish her Hutton account because of certain false representations which were made to her by the defendant Perrine as to how her account would be handled. Specifically, Cortlandt alleged that she was promised that her account would not be subject to margin calls, that purchases and sales of securities would be made only at her express direction and that Hutton's loans to her would be made at a preferential rate, ½ percent over the broker's loan rate. The alleged wrongs upon which plaintiff bases her claims under Rule 10b-5 stem from the fact that defendants sold various securities from her account at various times to meet margin calls on the account without her consent,

and for prices which were not the best prices obtainable, or at the bottom of the market, and solely for purposes of "churning" her account or generating commissions. In support of her claims under the 1940 Act plaintiff contends that investment advice given her by Hutton's representatives was erroneous. Invoking this court's pendent jurisdiction, plaintiff has also leveled a series of charges against Hutton which, generally, amount to a breach of contract claim (for example, she contends that certain buy orders which she placed with Hutton were not executed).

## II. DISCUSSION.

It is undisputed that on September 17, 1974, subsequent to the opening of her E. F. Hutton account, plaintiff signed a standard Hutton "Customer's Agreement" (Defendant's Exhibit E). The fourth numbered paragraph of this document states, in pertinent part that:

> "Whenever you [Hutton] deem it necessary for your protection, you are authorized, in your sole discretion, to sell, assign and deliver all or any part of the securities, commodities, or contracts in commodities or securities, or other property, pledged hereunder, upon any exchange or market or at any public or private sale at your option, and/or make any necessary purchases to cover short sales or open commodity contract positions, all without demand for margin, advertisement, or notice of purchase or sale to the undersigned, or to his personal representatives."

Hutton justified the sales made by it of Cortlandt's securities to which she here objects as necessary to maintain margin requirements. Plaintiff's response to this has two prongs: first, she claims that she had an oral agreement with defendants inconsistent with the above-quoted terms of the Hutton "customers agreement", pursuant to which her account was not to have been subject to margin calls. Secondly, while conceding that she signed the Hutton "Customer's Agreement" on September 17, 1974, plaintiff contends that she did not deliver the signed agreement to Hutton until sever-

al months later, by which time several of the transactions of which she here complains had already occurred. Plaintiff alleges that the contract was not binding upon her as long as it was undelivered to defendant.

Under New York law, which governs the contract between these parties, there is a question of fact as to the existence of a binding contract in the absence of delivery, which is to be determined on the basis of the intention of the parties. Having heard plaintiff's testimony at trial, and observed her demeanor, the court finds it incredible, that she could, as she testified, have intended to escape being bound by the written margin agreement. The only reasons given by her for her failure to promptly return the agreement are that she thought that she had been asked to sign it as "a mere formality", and that she "didn't trust them [Hutton]". However, plaintiff also testified that she had had extensive experience with stock ownership and had previously maintained margin accounts with several brokerage firms other than Hutton. Given this extensive experience, the court finds her testimony to the effect that she did not consider herself bound by the written margin agreement to be incredible. Without regard to whether or not the resulting arrangement was entirely to plaintiff's liking or consistent with the sort of preferential treatment which she seems to have wished to receive, she must have understood that the written margin agreement was binding upon her. Thus the court resolves the fact question of the parties' intent concerning the effectiveness of this undelivered written instrument in defendant's favor, and finds that plaintiff's failure to promptly deliver the signed instrument was no bar to its validity.

Plaintiff's second ground for avoiding the provisions of the written margin agreement must pass muster under the parol evidence rule. To the extent that there was a valid and binding written agreement between the parties, the parol evidence rule would bar plaintiff from claiming that there were other, orally

**4**

agreed upon provisions to the contrary. Under the parol evidence rule, terms of an agreement which are ". . . set forth in a writing intended by the parties as a final expression of their agreement . . . may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement . . . ." *Leumi Financial Corporation v. Richter*, 17 N.Y.2d 166, 269 N.Y.S.2d 409, 216 N.E.2d 579 (1966); *Britton v. Dorman & Wilson, Inc.*, 54 A.D.2d 953–954, 388 N.Y.S.2d 631 (2d Dept. 1976).

Plaintiff can not offer evidence of any agreement between herself and Hutton in contradiction to the written margin agreement unless it comes within one of the five exceptions to the parol evidence rule which are recognized in the state of New York. *See,* 22 *N.Y. Jur.*, §§ 607, 616, 627, 629, 631.

The first of the five exceptions provides that parol evidence may be admissible to show that what appears to be a contract does not in fact create a binding obligation, due to, *inter alia,* fraud or deceit. "It was never intended that the parol evidence rule should be used as a shield to prevent the proof of fraud, or that a person could arrange to have an agreement obtained by him through fraud exercised upon the other contracting party reduced to writing and formally executed, and thereby deprive the courts of the power to prevent him from reaping the benefits of his chicanery. As a matter of necessity, the fact that a contract was induced by false misrepresentations may be shown by parol or extrinsic evidence even though the contract is in writing." 24 *N.Y. Jur.* § 281. *See, Millerton Agway Cooperative, Inc. v. Briarcliff Farms, Inc.*, 17 N.Y.2d 57, 268 N.Y.S.2d 18, 215 N.E.2d 341 (1966); *Warshaw v. Hassid*, 41 A.D.2d 652, 340 N.Y.S.2d 666 (2d Dept. 1973) (error for trial court to exclude evidence that written contract was not to take effect unless defendant could obtain apartment sought by plaintiff.)

■ However, this exception to the parol evidence rule may not be relied upon to show the invalidity of a written contract where the trier of fact finds that fraud has not been proven. *Smiles Candy Corp. v.*

*Allvend Industries, Inc.*, 43 A.D.2d 748, 350 N.Y.S.2d 731 (2d Dept. 1973). As stated above, the court found plaintiff's testimony as to her intent with respect to the written margin agreement to be incredible. Accordingly, this first exception to the parol evidence rule cannot bar reliance on the written contract in this case.

■ No facts have been alleged here which would even suggest the applicability of any of the four remaining exceptions to the parol evidence rule. Briefly stated, parol evidence may be admitted to complete an apparently incomplete contract (*Laskey v. Rubel Corp.*, 303 N.Y. 69, 100 N.E.2d 140 (1951)), but in such a case it is admissible only if it does not contradict the writing. The writing and the alleged oral agreement here are plainly contradictory. Parol evidence may likewise be offered to cure an ambiguity, *Reed v. Insurance Co.*, 95 U.S. 23, 24 L.Ed. 348 (1877), but nothing of the sort has even been suggested here. The fourth exception admits parol evidence to prove a *collateral independent* contract from that contained in the writing; it may not set forth terms which ordinarily would be incorporated in the writing. *Fogelson v. Rackfay Construction Co.*, 300 N.Y. 334, 90 N.E.2d 881 (1950); *Mitchill v. Lath*, 247 N.Y. 377, 160 N.E. 646 (1928); see, 22 *N.Y. Jur.* § 607. Again, plaintiff has alleged nothing of the sort and, if anything, would seem to have claimed that the oral agreement on which she would rely *antedated* the written margin agreement.

■ It thus appears that if plaintiff has any claim at all, it is for violation of the terms of the written margin agreement itself. Such a claim cannot amount to a cause of action under § 10(b) of the Securities and Exchange Act, or Rule 10b-5. *Shemtob v. Shearson, Hammill & Co., Inc.*, 448 F.2d 442 (2d Cir. 1971).

■ Plaintiff's remaining federal claim is made under § 206 of the Investment Adviser's Act of 1940, 15 U.S.C. § 80b-6. This claim must fall as a matter of law, since plaintiff failed to introduce any facts at trial from which the court might con-

clude that Hutton or any of its employees, who are individual defendants here, were "investment advisers" as defined in § 202 of the 1940 Act, 15 U.S.C. § 80b-2(11). As the statute expressly provides, an investment adviser is:

> ". . . any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning securities; but does not include . . . (C) any broker or dealer whose performance of such services is solely incidental to the conduct of his business as a broker or dealer and who receives no special compensation therefor . . .."

15 U.S.C. § 80b-2(11).

Plaintiff did not even allege that Hutton, or its employees who are defendants here, went beyond acting as brokers to engage in any investment advisory activities that were not "solely incidental" to their brokerage business. Hence the antifraud provision of the 1940 Act, § 206, cannot apply.

With the failure of plaintiff's claims under the securities law, there are no federal claims remaining in this lawsuit. Although plaintiff raised additional issues under state law, invoking this court's pendent jurisdiction, her case was overwhelmingly focused on the alleged securities law violations. Given the fact that this trial was aborted at its midpoint, this court elects to exercise its discretion under *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) to dismiss the action in its entirety. Accordingly, defendant's motion to dismiss made at the close of plaintiff's case is hereby granted.

SO ORDERED.