**KROFFT ENTERTAINMENT, INC., Plaintiff,**

v.

**CBS SONGS, A DIVISION OF CBS, INC., Defendant.**

No. 85 Civ. 4836 (WCC).

United States District Court, S.D. New York.

Feb. 23, 1987.

Parcher, Arisohn & Hayes, P.C., New York City, for plaintiff; Helene M. Freeman, Loretta M. Gastwirth, of counsel.

Schonwald Schaffzin & Mullman, Esqs., New York City, for defendant; Allen G. Reiter, William K. Sanders, of counsel.

WILLIAM C. CONNER, District Judge:

*Background*

Plaintiff, Krofft Entertainment, Inc., ("Krofft"), brings this action alleging that defendant, CBS, Inc., ("CBS"), breached an agreement pursuant to which certain songs, composed and written by Nacio Herb Brown and Arthur Freed, were licensed to Krofft for use in the production of a Broadway musical play entitled "A Broadway Baby." The contract gave Krofft, the licensee, exclusive rights to the songs incorporated in the musical score of "A Broadway Baby," except that CBS, the licensor, reserved the right to sell and license, on a non-exclusive basis, up to four of such songs in connection with another

stage, theatrical motion picture, or television project. In April, 1985, CBS licensed another stage project, entitled "Singin' in the Rain," to use more than four songs from the musical score of "A Broadway Baby."

Plaintiff contends that CBS, in extending this license, breached the agreement. CBS answers that the license agreement between itself and Krofft terminated on December 31, 1984, well before the time at which CBS entered into its license agreement with "Singin' in the Rain." Krofft replies that the term of its agreement with CBS was extended to December 31, 1985 by a modification of the agreement, negotiated by both Krofft and CBS, drafted by CBS, and dated December 31, 1984 ("the Modification"). CBS, however, maintains that this Modification never went into effect because Krofft failed to return executed copies of the Modification to CBS as was allegedly required by the transmittal letter in order for the contract to become effective. In support of its position, defendant contends that CBS's transmittal letter to Krofft, which specifies that Krofft should return the executed copies to CBS, establishes delivery as a condition precedent to the effectiveness of the Modification.

In bringing this action, plaintiff Krofft seeks to recover the actual costs and expenses incurred in developing "A Broadway Baby" for presentation on Broadway. CBS answers that its alleged breach was not what prevented Krofft from producing "A Broadway Baby" on Broadway. It suggests that, had "Singin' in the Rain" been produced with only four of the songs from the musical score of "A Broadway Baby," Krofft would have still been unable to stage its show. An overlap of even four musical numbers, CBS contends, would have been fatal. It concludes that Krofft should not be permitted to recover its expenses as damages, since they would have been lost with or without CBS's performance of the license agreement.

This action is before the Court on plaintiff Krofft's motion for summary judgment pursuant to rule 56, Fed.R.Civ.P. Plaintiff seeks summary judgment on both the liability and damage issues. Krofft contends that (1) as a matter of law the Modification effectively extended the term of the agreement, and thus plaintiff is entitled to summary judgment in its favor on the issue of liability; and (2) it has produced uncontested evidence of expenses which it incurred in preparation for the presentation of "A Broadway Baby" on Broadway, and is thus entitled to summary judgment in its favor on the issue of damages.

CBS answers that (1) whether plaintiff's failure to deliver executed copies of the Modification to CBS prevented it from ever becoming effective is a factual question of contract interpretation that precludes summary judgment as to the liability issue; and (2) whether "A Broadway Baby" would have been produced on Broadway, had CBS not licensed more than four songs to "Singin' in the Rain," is a question of fact that precludes summary judgment as to damages.

### Discussion

It is well settled that summary judgment may be granted only where "there is no genuine issue as to any material fact". Fed.R.Civ.P. 56(c); *Knight v. U.S. Fire Insurance Company*, 804 F.2d 9, 11 (2d Cir. 1986). In its affidavits and exhibits submitted to the Court in opposition to this motion, defendant has demonstrated that there are material facts in dispute which preclude the granting of summary judgment at this time.

### I. The Liability Issue

The parties' dispute on the question of liability turns on whether Krofft's failure to return to CBS executed copies of the Modification prevented it from becoming effective. Under New York law, whether delivery is a pre-condition to a contract's validity is a question of fact which is to be determined by the parties' intent. Thus, the question of liability in this case cannot be disposed of by merely resolving an issue of law. Defendant has demonstrated that there exists a question of fact as to wheth-

er CBS, by specifying in the cover letter accompanying the Modification that Krofft's attorneys "arrange for execution on behalf of Krofft Entertainment and the return of the two fully executed copies to [CBS]," established delivery as a condition precedent for the effectiveness the Modification.

CBS has offered the Court evidence in support of its contention that, by specifying in the transmittal letter which accompanied the Modification that Krofft should return the executed copies, CBS intended to establish delivery as a condition precedent to the contract's validity. Affidavit of Barbara Adams ("Adams Affidavit") ¶ 8. It has, further, attempted to demonstrate that this language should have put Krofft on notice that such delivery was required. For example, CBS points out that, in the cover letter, it prefaced its request for delivery with the language "if acceptable to you." This language, CBS asserts, suggests that by sending Krofft the Modification for signature, it was only making an offer. Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment ("Defendant's Memorandum of Law") at 19. One may reasonably assume, CBS argues, that where such an offer is made, the offeror may require at least some sort of notice that the offeree has accepted the offer, before a binding contract is created. Defendant has also offered evidence of prior dealings in which the parties tended to rely on delivery as a mode of acceptance. Defendant's Memorandum of Law at 3; Adams Affidavit ¶¶ 9–10.

Krofft has offered counter evidence in support of its contention that the parties intended that the contract would go into effect immediately upon execution. Krofft has suggested, for instance, that in the transmittal letter CBS did not clearly state that if Krofft failed to return the executed copies, CBS would not consider itself bound under the Modification. Plaintiff's Reply Memorandum in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Reply Memorandum") at 9. Moreover, on previous occasions, CBS drafted agreements with explicit "no delivery, no contract" conditions. Plaintiff's Reply Memorandum at 13. Krofft therefore asserts that CBS's language in the cover letter was intended merely as a "request, pure and simple." Plaintiff's Reply Memorandum at 8. In addition, Krofft points to certain actions of CBS which, it contends, indicated an intent to be bound by the Modification upon its execution. Plaintiff's Reply Memorandum at 12.

Krofft requests that this Court find that delivery was not required as a matter of law, or, in the alternative, that the evidence so clearly indicates an intent on CBS's part to become bound upon the Modification's execution by Krofft, that no reasonable jury could find that the parties desired to require delivery of the written instrument as a condition precedent.

■■■ New York contract law requires that any relevant evidence of the parties' intent be examined when determining whether a contract requires delivery. Plaintiff argues that the parol evidence rule demands the exclusion of the cover letter as evidence of the parties' intent. Generally speaking, where a contract is fully integrated, its terms may not be varied by parol evidence. *CTI–Container Leasing Corp. v. Oceanic Operations Corp.*, 682 F.2d 377, 382 (2d Cir.1982). Yet, where the parol evidence sought to be introduced does not contradict an express term in contract, the rule does not apply. *Hicks v. Bush*, 10 N.Y.2d 488, 491, 180 N.E.2d 425, 427, 225 N.Y.S.2d 34, 37 (1962) (J. Fuld). Since here, the Modification did not expressly state that it would become valid upon execution, parol evidence that delivery was required cannot be said to contradict any term in the integrated agreement and is thus admissible.

Under New York contract law, whether a contract requires delivery is a question of fact which must be answered by examining all the evidence bearing on the parties' intent. The New York courts have rejected the notion that as a matter of law the delivery of a contract is essential to its

effectiveness. Indeed, they have found that a binding contract may be made without physical delivery. *Bohlen Industries v. Flint Oil & Gas, Inc.,* 106 A.D.2d 909, 910, 483 N.Y.S.2d 529, 530 (4th Dept.1984); *Armour & Company v. Celic,* 294 F.2d 432, 435 (2d Cir.1961). Yet, each time that the courts have agreed to enforce a contract which was never delivered, the decision was based upon a finding that the parties manifested no intent to establish delivery as a condition precedent to the contract's effectiveness. *Bohlen,* 106 A.D.2d at 910, 483 N.Y.S.2d at 530 (Provision in agreement that permitted execution in counterparts was included in order to avoid the delay that delivery between the parties, who were separated by great distance, would necessitate); *Cortlandt v. E.F. Hutton, Inc.,* 491 F.Supp. 1, 3 (S.D.N.Y.1979) (Given the plaintiff's extensive experience with stock ownership, court found it incredible that she could have believed that her failure to deliver would have prevented the contract from becoming valid). Courts have consistently held that the existence of a binding contract in the absence of delivery is a question of fact which is to be determined on the basis of the intention of the parties. *Cortlandt,* 491 F.Supp. at 3; *Reprosystem, B.V. v. SCM Corp.,* 727 F.2d 257, 261 (2d Cir.), *cert. denied,* 469 U.S. 828, 105 S.Ct. 110, 83 L.Ed.2d 54 (1984). Moreover, summary judgment was denied in a case where the controversy was over whether "certain acts, words, and circumstances" indicated that the parties intended to require the delivery of the written instrument as a pre-condition to the contract's effectiveness. That court concluded that "[t]hese and other facts upon the subject of delivery set forth in the affidavit present a factual issue that requires a trial." *Birch v. McNall,* 19 A.D.2d 850, 850–851, 244 N.Y.S.2d 60, 61 (4th Dept.1963).

Similarly, here, summary judgment cannot be granted since there is a legitimate factual dispute regarding the interpretation of the contract's terms. Judge Kaufman recently relied upon the rule of *Heyman v. Commerce & Industry Ins. Co.,* 524 F.2d 1317 (2d Cir.1975), in reversing a grant of summary judgment:

> In an action on a contract—such as the one before us—summary judgment is perforce improper unless the terms of the agreement are "wholly unambiguous" ... Accordingly, unless the moving party can establish that the contractual language is not "susceptible of at least two fairly reasonable meanings" ... a material issue exists concerning the parties' intent, and the non-moving party has a right to present extrinsic evidence regarding the meaning of the contested term.

*Wards Company, Inc. v. Stamford Ridgeway Associates,* 761 F.2d 117, 120 (2d Cir. 1985) (citations omitted). Summary judgment has been denied where a contract was ambiguous and parol evidence relevant. *Ralli v. Tavern on the Green,* 566 F.Supp. 329 (S.D.N.Y.1983). It was also denied, in a case involving contract interpretation, where the parties' intentions, their prior dealings, and custom and usage in the trade were at issue. *Savarin Corp. v. National Bank of Pakistan,* 290 F.Supp. 285 (S.D.N.Y.1968), *modified on other grounds,* 447 F.2d 727 (2d Cir.1971).

■ The question of whether the language in CBS's transmittal letter, when combined with the other circumstances surrounding the negotiations of the Modification, made Krofft's delivery of the executed copies a condition precedent to the effectiveness of the Modification is an issue of fact which cannot be resolved without examining the prior dealings of the parties, the parol evidence, the negotiations between the parties, and any other evidence which may be relevant.

■ Further the Court does not agree with Krofft's contention that the evidence of the parties' intention to be bound absent delivery is so overwhelming that a directed verdict would be warranted in Krofft's favor. The Supreme Court has indicated that where "the evidence is such that a reasonable jury could [not] return a verdict for the non-moving party," summary judgment

in the moving party's favor is appropriate. *Anderson v. Liberty Lobby, Inc.*, — U.S. ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). It is true that the language in the cover letter might be interpreted as a simple request. Moreover, it is possible that CBS's behavior after the expiration of the original contract might indicate an intent to be bound without delivery of the Modification. But it is clear that, based on the evidence which has been submitted to the Court thus far, when all the factual ambiguities are resolved in CBS's favor, *Anderson*, 106 S.Ct. at 2509-11, CBS has met its burden of coming forward with enough evidence to withstand a directed verdict.

## II. The Damage Issue

■ Summary judgment is similarly not warranted on the issue of damages. CBS has demonstrated that factual questions are present as to whether it was CBS's breach of the agreement between itself and Krofft that prevented "A Broadway Baby" from reaching Broadway, or whether the Broadway opening was frustrated by independent factors.

Legal commentators agree that the plaintiff in a contracts case cannot be awarded damages unless the trier of fact is persuaded that the harm which the plaintiff suffered was in fact caused by the defendant's breach. McCormick, for instance, has declared that:

> To hold one responsible for damage suffered by another, his act or omission must have been a "substantial factor" in producing the damage, and ordinarily this can only be true where the damage would not have occurred "but for" the alleged wrongful act or omission.... [Whether the act or omission was a "substantial factor"], if the evidence leaves room for doubt, is a question for the jury. The necessity of establishing a causal connection between the defendant's conduct and the harmful consequence is equally present in cases of breach of contract as in the field of wrongs.

C. McCormick, *Handbook on the Law of Damages* § 73 at 261 (1935). Corbin in his treatise on contracts noted that, "a causal relation must be shown to exist between the defendant's conduct and the harm for which damages are sought". 5 A. Corbin, *Corbin on Contracts* § 997 at 21 (1964). Thus, "compensatory damages are limited to those losses and pecuniary disappointments that are 'caused' by the breach.... It is not enough to show that an expenditure was in reliance on the contract. It must be shown that but for the breach the expenditure would have been reimbursed by expected gains". *Id.* § 992 at 6-7. Corbin concludes that a plaintiff cannot charge the other party with losses and disappointments that would have occurred in the absence of any breach by the other party, since such losses were "not caused by the other party's breach of duty." *Id.* § 992 at 6. *See also Reman Associates, Inc. v. R/A Advertising, Inc.*, 102 Wis.2d 305, 321, 306 N.W.2d 292, 301 (Ct.App.1981) (In contract actions, legal cause is made up of two components, cause-in-fact and proximate cause).

New York contract law adheres to the rule that there can be no recovery where the plaintiff fails to prove that his injury was caused by the defendant's breach. Damages were denied, for instance, in *McFarland v. Gregory*, 425 F.2d 443 (2d Cir.1970), where "but for" causation was found to be lacking. In that case, the plaintiff claimed that the defendant's conduct impeded the exercise of his rights under a contract between himself and the defendant, and that "but for that impeditive conduct he could and would have exercised his option rights at an earlier date." *McFarland*, 425 F.2d at 446. The Court of Appeals for the Second Circuit upheld the trial court's ruling that, without proof that the plaintiff could have in fact exercised the option at an earlier date, damages could not be claimed. There had to be "convincing proof that acts performed at a later date could be performed at an earlier date." *McFarland*, 425 F.2d at 447.

CBS has presented evidence in support of its claim that the damages which Krofft

seeks may not have been in fact caused by CBS's alleged breach. Defendant argues that Krofft's plan to produce "A Broadway Baby" on Broadway was frustrated prior to the time that CBS allegedly breached the agreement, when it became clear that "Singin' in the Rain" would be produced concurrently with Krofft's show and would incorporate four duplicative songs. CBS contends, for instance, that the license which it granted to the producers of "Singin' in the Rain" did not significantly affect the duplication of songs between "A Broadway Baby" and "Singin' in the Rain." Prior to the alleged breach, the producers of "Singin' in the Rain" had been permitted to use four of the songs licensed to Krofft. When "Singin' in the Rain" was on Broadway, nine songs from the musical score of "A Broadway Baby" were used, four of which were used "only incidentally." Defendant's Memorandum of Law at 8. CBS contends that the duplication that existed prior to the breach "had a disasterous effect on [Krofft's] plans to produce 'A Broadway Baby' on Broadway". Defendant's Memorandum of Law at 9. Specifically, CBS contends that Krofft's ability to obtain continued financing for the show was impaired. In support of this contention, defendant CBS has presented to the Court statements made by both Marty and Sid Krofft, from which CBS infers that Krofft would have been discouraged by any New York production of "Singin' in the Rain." Affidavit of William K. Sanders ("Sanders Affidavit") ¶¶ 8–10. Moreover, defendant maintains that, even after its alleged breach, CBS was willing to license the songs to Krofft from "A Broadway Baby," albeit on less favorable terms. Sanders Affidavit ¶ 11.

In sum, CBS has offered an interpretation of the facts which suggest that the concurrent production of "Singin' in the Rain," even with only four songs, made it difficult for Krofft to obtain financing for its opening on Broadway. Sanders Affidavit ¶ 14. When CBS, in March 1985, made a final request by telephone for an executed copy of the Modification, Krofft once again failed to comply. Indeed, it did not attempt to communicate with CBS again until a month later. Defendant's Memorandum of Law at 4. It may be that Krofft's concerns about "Singin' in the Rain," and the alleged financing difficulties, caused the delay in Krofft's response to CBS's warnings.

Of course, Krofft has presented evidence in support of its contention that CBS's breach prevented Krofft from bringing "A Broadway Baby" to Broadway. For instance, Krofft notes that Marty Krofft at his deposition stated that he would have gone through with the Broadway production had there been an overlap of only four songs between "A Broadway Baby" and "Singin' in the Rain." Plaintiff's Reply Memorandum at 21. Indeed, the capital for such a project, Krofft suggests, was available. Plaintiff's Reply Memorandum at 23. Moreover, Krofft's evidence indicates that these investments were dependent on its exclusive license agreement with CBS. Plaintiff's Reply Memorandum at 20. Finally, according to Krofft, theater experts agree that no one would have invested in a production of "A Broadway Baby" which contained eight of the same musical numbers as "Singin' in the Rain." Plaintiff's Reply Memorandum at 22.

Nevertheless, CBS's attack on Krofft's allegation of "but for" causation is well substantiated in its affidavits in opposition to the motion. This Court's responsibility in considering plaintiff's motion for summary judgment "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried". *Knight*, 804 F.2d at 11. Since the dispute over causation presents a "proper jury question," summary judgment cannot be granted on the issue of damages at this time. *Anderson*, 106 S.Ct. at 2510.

### Conclusion

Defendant CBS, through its affidavits and exhibits in opposition to the motion, has met its burden of demonstrating that factual questions are present as to (1) whether Krofft's failure to deliver the executed Modification to CBS rendered it inef-

fective; and (2) whether "A Broadway Baby" would have been produced on Broadway absent CBS's alleged failure to perform.

For the reasons outlined above, plaintiff's motion for summary judgment is denied.

SO ORDERED.