**AFFILIATED CAPITAL SERVICES CORPORATION, Plaintiff,**

v.

**WEST ATLANTIC CITY ASSOCIATES, et al., Defendants.**

**No. CIV-87-97S.**

United States District Court,
W.D. New York.

March 28, 1991.

---

Michael B. Powers, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, N.Y., for Affiliated Capital Services Corp.

Steven R. Popofsky, Gersten, Savage, Kaplowitz & Curtin, New York City, Jerome D. Schad, Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N.Y., for West Atlantic City Associates, Price, Webb and CDGI.

John M. Curran, Albrecht, Maguire, Heffern & Gregg, Buffalo, N.Y., for Bruce Mahon.

## DECISION AND ORDER

SKRETNY, District Judge.

### INTRODUCTION

Now before this Court for decision is defendant Bruce Mahon's ("Mahon") Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56.

Affiliated Capital ("plaintiff") sues defendants jointly and severally for breach of contract, unjust enrichment and fraud seeking compensatory and punitive damages. By its breach of contract and unjust enrichment claims, plaintiff seeks to recover a brokerage commission allegedly owed as a result of its arranging financing from E.F. Hutton ("Hutton financing") for a New Jersey hotel project ("Hotel Project"). Additionally, via its fraud claim, plaintiff alleges that defendants conspired to deprive plaintiff of its commission for arranging the Hotel Project financing.

Defendants are West Atlantic City Associates ("West Atlantic"), a limited partnership, West Atlantic City Hotel Associates ("Hotel Associates"), a limited partnership, Mahon, a West Atlantic general partner, Commercial Development Group, Inc. ("CDG"), a Hotel Associates general partner, and Gary L. Price ("Price") and James A. Webb III, ("Webb"), both general partners of West Atlantic and Hotel Associates.

Preliminarily, this Court notes that plaintiff predicates its breach of contract causes of action, claims one through four of the Third Amended Complaint, on West Atlantic's breach of four separate agreements (collectively "the Agreements"). Three of these agreements are brokerage agreements between plaintiff and West Atlantic: A First Brokerage Agreement ("First Agreement"), executed between West Atlantic and plaintiff in January 1986; a Letter Agreement dated August 4, 1986, signed by Price as agent of West Atlantic and executed with plaintiff; and a Second Brokerage Agreement ("Second Agreement") dated August 6, 1986, signed by Price, also as agent of West Atlantic and executed with plaintiff. In a fourth agreement, the Non–Circumvention Agreement, contained in the First Agreement and also executed between West Atlantic and plaintiff in January 1986, West Atlantic agreed "... not to deal with any lenders, investors, or investment companies ... introduced to West Atlantic ..." within five years of that agreement without advising plaintiff and involving plaintiff in any such transactions.

This case has been in its pretrial stage since February 1987, when plaintiff filed its Complaint. On April 18, 1989, plaintiff filed its Third Amended Complaint. On May 3, 1989, Mahon filed his separate Answer to the Third Amended Complaint. On May 26, 1989, the remaining defendants filed an Answer to the Third Amended Complaint. Also on May 26, 1989, Mahon filed the present motion seeking summary judgment on all causes of action as against him. As detailed below, on February 5, 1990, Judge Arcara ordered that New Jersey law be applied to limited issues in this case.[1] Finally, on January 29, 1991, I heard oral argument on the present motion.

In support of his motion, Mahon has submitted a Legal Memorandum ("Mahon Memo"); a Reply Memorandum ("Mahon Reply"); a Supplemental Memorandum ("Supp. Memo"); a Letter Brief ("Mahon Letter Brief"); a Statement of Material Facts Not In Dispute ("Mahon Fact Statement"); affidavit of Bruce Mahon with exhibits ("Mahon aff."); and the affidavit of John Curran, Esq. with exhibits ("Curran aff.").

In opposition to Mahon's motion, plaintiff has submitted a Legal Memorandum ("Plaintiff Memo"); a Reply Memorandum ("Plaintiff Reply"); a First Supplemental Legal Memorandum ("Plaintiff's 1st Supp. Memo"); a Second Supplemental Legal Memorandum ("Plaintiff's 2d Supp. Memo"); a Statement of Material Facts in Dispute ("Plaintiff Fact Statement"); and the affidavit of Michael Capozzi, III, with exhibits ("Capozzi aff.").

---

1. On November 16, 1990, Judge Arcara transferred this case to me.

In ruling on this motion, I have considered all these submissions and oral argument. Because the following discussion incorporates the relevant facts, I proceed to the parties' substantive arguments without a more detailed fact recitation.

*Conclusion:* For the reasons set forth below, this Court denies Mahon's motion for summary judgment in part and grants the motion in part.

## SUMMARY JUDGMENT

■ Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate where it is shown that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The burden is upon the moving party to demonstrate the absence of a material factual dispute. Fed.R.Civ.P. 56(e). Once that burden is met, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). This Court must draw all reasonable inferences in favor of the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970).

With this standard in mind, this Court will address the relevant legal issues.

## BREACH OF CONTRACT (FIRST THROUGH FOURTH CLAIMS FOR RELIEF)

In claims one through four of the Third Amended Complaint, plaintiff alleges Mahon's liability, as a West Atlantic general partner, for West Atlantic's breach of four separate agreements: the First Agreement, the Letter Agreement, the Second Agreement and the Non–Circumvention Agreement.

Mahon moves for summary judgment on all plaintiff's breach of contract claims. Mahon contends that he withdrew from West Atlantic before West Atlantic's liabili-

ty under any of the agreements attached, and, therefore, he could have no liability under the Agreements as a West Atlantic general partner.

Plaintiff responds that Mahon never legally withdrew from West Atlantic and that, therefore, Mahon remains personally liable to plaintiff for West Atlantic's contractual liabilities at least until West Atlantic concluded doing business. At minimum, plaintiff argues, the issue of Mahon's withdrawal remains a question of fact which defeats Mahon's summary judgment motion as to Mahon's liability for West Atlantic's breaches.

On February 5, 1990, Judge Arcara ordered that New Jersey law be applied to determine the issues of Mahon's withdrawal from West Atlantic, including the time such withdrawal, if any, occurred and, if this Court concludes Mahon withdrew from West Atlantic, Mahon's obligations under the Agreements, if any, as a withdrawing partner. This Court first addresses the issue of Mahon's withdrawal from West Atlantic. This Court will then discuss the issue of Mahon's liability under the Agreements.

### A. Mahon's Withdrawal From West Atlantic

New Jersey Limited Partnership Law, as amended, governs the issue of Mahon's withdrawal from West Atlantic. Specifically, N.J.STAT.ANN. § 42:2A–31 (West 1990) ("§ 42:2A–31") contains an explicit list of events or actions by a general partner any of which, in the absence of written approval of all partners, can constitute the general partner's withdrawal from the limited partnership.

■ This Court concludes that a question of fact exists as to whether Mahon withdrew from West Atlantic in accordance with § 42:2A–31, and sections referenced therein, and if Mahon withdrew, as to when Mahon withdrew.[2]

---

**2.** In its 2d Supp. Memo, filed February 23, 1990, plaintiff for the first time asks this Court to render summary judgment in its favor on the issue of Mahon's withdrawal from West Atlantic. Plaintiff argues that Mahon has produced

no evidence that he withdrew from West Atlantic in accordance with § 42:2A–31. This Court chooses not to treat plaintiff's argument as a cross-motion since Mahon has not been afforded an opportunity to respond to this argument

As discussed below, for purposes of the present motion because Mahon's withdrawal from West Atlantic and when such withdrawal may have occurred remain questions of fact, this Court must deny Mahon's summary judgment motion with respect to all of plaintiff's breach of contract claims. However, this Court feels compelled to address two issues relating to Mahon's alleged withdrawal which the parties have raised in their papers and which, if addressed now, will assist ultimate resolution of this case on the merits.

■ First, this Court notes that, under New Jersey law, the withdrawal of a general partner from a limited partnership does not necessarily effect a dissolution of the partnership, although both parties' papers imply a partner's withdrawal tantamount to a dissolution. Under N.J.STAT. ANN. § 42:2A–51(c) (West 1990), a general partner's withdrawal from a limited partnership effects a dissolution of the limited partnership unless certain specified conditions are met or the certificate of limited partnerhsip provides that "... the business of the limited partnership [is] to be carried on by the remaining general partner or partners and that partner or partners do so...." However, since, although referring to dissolution only generally, the parties did not brief New Jersey's dissolution law, this Court renders no opinion whether Mahon's withdrawal, if any, effected a dissolution of West Atlantic.

■ Second, both parties have addressed the issue of whether plaintiff received notice of Mahon's alleged withdrawal from West Atlantic. While Mahon contends that plaintiff was advised orally in approximately June or July of 1986 of Mahon's withdrawal from West Atlantic (Mahon Memo, pp. 27–28, citing Capozzi deposition testimony), plaintiff contends that it received no notice that Mahon withdrew from West Atlantic (Plaintiff Memo, pp. 25–26, citing Capozzi aff.). The parties are in direct contradiction as to whether plaintiff ever received proper legal notice of Mahon's alleged withdrawal. Therefore, even were this Court to conclude that Mahon withdrew and that such withdrawal effected a dissolution of West Atlantic, a question of fact exists as to whether plaintiff received adequate notice so as to extinguish Mahon's liability to plaintiff.

Therefore, this Court denies Mahon's motion for summary judgment with respect to the issue of Mahon's withdrawal from West Atlantic and when such withdrawal may have occurred.[3]

Having reached this conclusion, this Court now addresses the issue of Mahon's liability for West Atlantic's alleged breaches of the Agreements, claims one through four of the Third Amended Complaint.

i. Mahon's Liability Under The First Agreement & Non–Circumvention Agreement, Plaintiff's First & Second Claims For Relief, Respectively

The parties do not dispute that plaintiff and West Atlantic executed the First Agreement and Non-circumvention Agreement in January 1986, well before any alleged withdrawal by Mahon from West Atlantic occurred.

■ However, Mahon argues he has no liability under the First and Non-circumvention Agreements since, Mahon contends, according to those agreements' own terms, West Atlantic's liability to plaintiff was contingent upon the closing of the Hotel Project financing and title passing. Since the loan closing did not occur until approximately December 17, 1986, well after Mahon contends to have withdrawn from West Atlantic, Mahon argues he has

---

in that procedural context. Instead, this Court considers this argument in opposition to Mahon's motion. Moreover, this Court notes that in Plaintiff's Fact Statement, ¶ 2, plaintiff maintains that a question of fact exists as to whether "Mahon withdrew from West Atlantic in approximately June of 1986."

**3.** Mahon has sought application of *59th And Park Associates v. Inselbuch,* 68 A.D.2d 838, 414 N.Y.S.2d 537 (1st Dept.1979), to this case.

The issue in *59th And Park,* however, was a partner's liability *after* his withdrawal from the partnership. Because a question of fact exists as to Mahon's withdrawal from West Atlantic, the reasoning in that case does not help Mahon for purposes of the present motion.

no liability as a West Atlantic general partner pursuant to the First and Non-circumvention Agreements between West Atlantic and plaintiff. (Mahon Memo, p. 29).

Plaintiff responds that Mahon's liability to plaintiff under the First Agreement, as a West Atlantic general partner, attached not at the closing but, according to plaintiff's interpretation of that Agreement, when West Atlantic "received and accepted" the commitment from E.F. Hutton to finance the Hotel Project in February 1986. (Plaintiff Memo, p. 19; Plaintiff 2d Supp. Memo, p. 15). Furthermore, according to plaintiff, Mahon's liability under the Non–Circumvention agreement, according to plaintiff's interpretation of that Agreement, attached when West Atlantic first " 'dealt' with E.F. Hutton without involving or obtaining consent from Affiliated Capital after being 'introduced' to E.F. Hutton by Affiliated Capital," in May 1986. (Plaintiff Memo, pp. 19–20).

This Court concludes that Mahon's liability under the First and Non-circumvention Agreements remains a factual issue, the resolution of which depends on the fact trier's interpretation of those agreements. *See, Krofft Entertainment, Inc. v. CBS Songs,* 653 F.Supp. 1530, 1533 (S.D.N.Y. 1987) (Summary judgment on breach of contract claim denied where factual dispute existed as to interpretation of contract's terms.) (citations omitted).

Therefore, this Court denies Mahon's motion for summary judgment with respect to the issue of Mahon's liability under the First Agreement and the Non–Circumvention Agreement, plaintiff's first and second claims for relief, respectively.

ii. Mahon's Liability Under The Letter Agreement and Second Agreement, Plaintiff's Third & Fourth Claims For Relief, Respectively

As noted above, Price, as agent of West Atlantic, and plaintiff executed the Letter Agreement and Second Agreement on August 4, 1986 and August 6, 1986, respectively.

Mahon argues that Mahon's withdrawal from West Atlantic in "approximately June of 1986" effected a dissolution of West Atlantic at that time. Mahon further argues that since plaintiff received concurrent oral notice of the withdrawal, his liability to plaintiff was "cut off" near June 1986, approximately two months before execution of the Letter Agreement and the Second Agreement. (Mahon Memo, pp. 27–28). Therefore, Mahon contends he has no liability to plaintiff, as a West Atlantic general partner, under the Letter and Second Agreements, executed between plaintiff and West Atlantic.

Plaintiff responds that even had Mahon withdrew from West Atlantic in June 1986, Mahon, as a general partner in West Atlantic, would be liable for all business necessary to the winding up of West Atlantic, including the Second and Letter Agreements with plaintiff. (Plaintiff Memo, p. 23). Furthermore, plaintiff argues, even if this Court concludes that Mahon withdrew from West Atlantic prior to the execution of the Letter and Second Agreements, Mahon remains liable to plaintiff under those Agreements because plaintiff never received adequate notice of Mahon's withdrawal and the alleged subsequent dissolution. (Plaintiff Memo, pp. 24–26).

Because this Court concludes that a question of fact exists as to when Mahon withdrew from West Atlantic, if indeed any such withdrawal occurred, this Court cannot conclude whether liability under the Letter and Second Agreements attached to Mahon. Similarly, as already noted, a question of fact exists as to whether, if any withdrawal occurred, plaintiff received adequate notice of Mahon's withdrawal.

Therefore, this Court denies Mahon's motion for summary judgment with respect to the issue of Mahon's liability under the Letter Agreement and Second Agreement, plaintiff's third and fourth claims for relief, respectively.

In conclusion, as to plaintiff's breach of contract claims, claims one through four of plaintiff's Third Amended Complaint, this Court denies Mahon's motion for summary judgment.

FRAUD (SIXTH CLAIM FOR RELIEF)

In his motion, Mahon contends that no evidence supports plaintiff's fraud claim.

In the sixth claim of the Third Amended Complaint, plaintiff alleges that Mahon and his co-defendants conspired to fraudulently deprive plaintiff from a commission for arranging financing for the Hotel Project by: failing to keep plaintiff "advised of the true status" of the financing for the Hotel Project, by "continuously informing" plaintiff that the financing for the project was "dead" though "defendant Price and other[s] continued" to pursue the financing for the project and by forming a second limited partnership, Hotel Associates, "in a calculated effort to make it appear that the financing was provided to a new entity which purportedly had not signed a brokerage agreement" with plaintiff. (Third Amended Complaint, ¶ 72). Plaintiff alleges that even if Mahon committed no fraudulent acts, he is still liable for the frauds of his co-partners. Plaintiff's fraud theory, then, includes alleged acts of concealment and affirmative misrepresentations, by Mahon and at least Price, intended to achieve or in connection with the ultimate act, defendants' formation of Hotel Associates—a partnership which, according to plaintiff, the defendants designed to prevent plaintiff's receipt of its commission.

▮ Plaintiff's fraud cause of action as against Mahon also stems from two bases: 1) allegations that Mahon, acting on behalf of West Atlantic, failed to disclose the "true status" of the Hutton financing and represented that the financing was "dead," both in combination with the Hotel Associates scheme; and 2) the fraudulent acts of Mahon's co-partner(s) for which Mahon also would be liable. The alleged fraudulent acts of Mahon's co-partners similarly consist of failure to disclose current developments regarding the Hutton financing and misrepresentations that the Hutton financing was "dead," also combined with the formation of Hotel Associates with the intent outlined above. Not only is Mahon's

alleged fraud liability predicated on his actions and the actions of his co-partners, but it consists of three components: concealment, affirmative misrepresentations and the formation of Hotel Associates. Plaintiff does not appear to be alleging three separate frauds but one fraud consisting of all three components. It is for the trier of fact to determine exactly how such fraud, if any at all, was accomplished.

However, drawing all reasonable inferences in favor of plaintiff, as this Court must for purposes of this motion, this Court cannot conclude that there is no genuine issue for trial on plaintiff's fraud theory, even viewing each fraud component separately. Therefore, this Court will now address plaintiff's allegations of fraud predicated on all three theories of concealment, affirmative misrepresentations and the Hotel Associates scheme itself.

A. *Concealment*

This Court concludes that a factual issue exists as to whether Mahon or Price failed to disclose material facts to plaintiff so as to constitute fraud under New York law.[4]

To prevail in a claim of fraud by concealment plaintiff must prove:

(1) a relationship between the contracting parties that creates a duty to disclose; (2) knowledge of the material facts by the party bound to make such disclosures; (3) non-disclosure; (4) scienter; (5) reliance; and (6) damage.

*Leasing Service Corporation v. Broetje,* 545 F.Supp. 362, 366 (S.D.N.Y.1982) (citations omitted).

Plaintiff offers Mahon's deposition testimony that Mahon failed to inform plaintiff of certain negotiations with Lloyds Bank ("Lloyds") in connection with a letter of credit in support of the Hutton financing and a second application to the New Jersey Economic Development Authority ("E.D. A.") regarding a bond issuance for the Hotel Project (*See* Capozzi aff., Exh. 15). Plaintiff also offers several telephone

---

**4.** The parties do not dispute that New York law applies to plaintiff's fraud and unjust enrich-   ment claims for relief.

records showing Mahon's receipt of telephone calls from plaintiff, (*See* Capozzi aff., Exh. 14), contending that during such calls Mahon failed to disclose to plaintiff that Lloyds Bank issued a first commitment letter, the second application to the E.D.A. and, in general, on-going negotiations between West Atlantic and E.F. Hutton, Lloyds and the E.D.A. (Plaintiff Memo, p. 28).

Plaintiff also offers Price's deposition testimony which, according to plaintiff, constitutes Price's admission that he concealed the true status of the Hotel Project financing, all in connection with or in furtherance of the Hotel Associates scheme itself. (Capozzi aff., ¶ 27; Plaintiff Memo, p. 30).

■ Under New York Law, fraud can be accomplished through concealment where a duty to disclose exists. The Second Circuit has held that a duty to disclose exists "... where the parties enjoy a fiduciary relationship ... [or] where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on mistaken knowledge." *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank,* 731 F.2d 112, 123 (2d Cir.1984) (citations omitted).

■ In its summary judgment papers, plaintiff argues that Mahon had a duty to speak based on his role as a West Atlantic general partner and West Atlantic's contractual relationship with plaintiff, presumably implying that this contractual relationship triggered a fiduciary duty owing from Mahon as a general partner to plaintiff. (Plaintiff Memo, pp. 28–29.) A fiduciary relationship, however, does not automatically stem from a contractual relationship and plaintiff pleads no facts indicating the existence of a particular relationship of trust or confidence between plaintiff and West Atlantic or its general partners. This Court will not imply such a relationship. However, this Court concludes that plaintiff not only pleads but has produced sufficient factual evidence, via deposition testimony of Mahon and Price, to support allegations that Mahon and Price possessed superior knowledge of the Hotel Project financing, not readily available to plaintiff, while plaintiff acted on the mistaken belief that the Hutton financing was "dead."

Whether the alleged concealment actually occurred, whether Mahon or Price possessed superior knowledge not readily available to plaintiff and whether plaintiff acted on mistaken knowledge, all in connection with the alleged fraud remain factual issues to be resolved by the jury.

In its reply, Mahon argues any failures of Mahon to inform plaintiff of the June 1986, E.D.A. application and ongoing negotiations with Lloyds Bank are immaterial vis-a-vis plaintiff because plaintiff "was not to be involved" in these matters. For purposes of this motion, this Court disagrees. A central theme of plaintiff's fraud claim is that Mahon and Price were the source of plaintiff's alleged mistaken knowledge by failing to inform plaintiff, and the Mahon and Price depositions arguably support this allegation,[5] of their ongoing dealings with those entities which ultimately financed the Hotel project. Plaintiff's theory is that the concealment of these facts was done either to further or in connection with the Hotel Associates scheme—the pinnacle of the alleged fraud which effectively deprived plaintiff of an allegedly owing commission. The actual materiality of this information, i.e. whether its disclosure would have enabled plaintiff to take some preventative or affirmative measure to recover its commission, remains an issue for the trier of fact. However, at this stage, this Court cannot conclude that the undisclosed information was not material.

Therefore, this Court denies Mahon's motion for summary judgment on plaintiff's fraud claim, the sixth claim of the Third Amended Complaint, with respect to the issue of fraud by concealment.

### B. *Affirmative Misrepresentations*

Plaintiff also alleges that Mahon and Price affirmatively misrepresented that the

---

5. This Court emphasizes that the Mahon and Price deposition testimony in no way conclusively establishes Mahon's (or his co-defendants') fraud liability. However the testimony constitutes admissible factual evidence creating a factual issue relative to fraud.

Hutton financing was "dead" although defendants continued to secure such financing, and this was done in combination with the Hotel Associates scheme.

In his summary judgment motion Mahon contends that he never informed plaintiff that the Hutton financing was "dead." In support of this contention, Mahon offers the deposition testimony of plaintiff's president Capozzi; according to Mahon, Capozzi testified that he had no recollection that Mahon told him that the Hutton financing was "dead" or not. (Mahon Memo, p. 32).

However, even if Mahon made no such misrepresentations, at least a factual issue exists as to whether Price made such statements.

Plaintiff, offering Price's deposition testimony, contends that Price admitted affirmatively misrepresenting that the Hutton financing was "dead," all in connection with or in furtherance of the Hotel Associates scheme itself. (Capozzi aff., ¶ 27; Plaintiff Memo, p. 30).

In its reply, Mahon argues that no evidence supports that "Price believed his statement that the E.F. Hutton financing was 'dead' was untrue at the time he made it" such that the statement was either false or made with an intent to deceive. (Mahon Reply, pp. 29–30).

This Court concludes that a question of fact exists as to whether at least Price's statements constituted fraud. Because Mahon may be held liable for the frauds of his co-partners, this Court denies Mahon's motion for summary judgment with respect to his liability for fraud based on affirmative misrepresentations.

Therefore, this Court denies Mahon's motion for summary judgment on plaintiff's fraud claim, the sixth claim of the Third Amended Complaint, with respect to the issue of fraud by affirmative misrepresentations.

C. *The Hotel Associates Scheme*

In his summary judgment motion, Mahon contends that not only was Hotel Associates never intended to involve Mahon but "[t]here is no evidence that Mahon was ever involved in any way with the formation of Hotel Associates or the operation of that partnership following its formation." (Mahon Memo, pp. 31–32).

Plaintiff cites several "facts" which it says support its contention that all defendants intended the Hotel Associates scheme to deprive plaintiff of its commission fee:

"(1) Price and Mahon were both aware that [plaintiff] was asserting a right to a fee for the E.F. Hutton financing; (2) the agreements with [plaintiff] were in the name of West Atlantic; (3) West Atlantic's limited partnership agreement had ample provisions permitting the withdrawal and addition of general partners obviating the need to form a new partnership; (4) Price in his deposition could not recall why Hotel Associates was formed, except to say it was upon the advice of counsel; (5) as late as November, 1986 the New Jersey E.D.A. thought it was dealing with West Atlantic; (6) Mr. Brun, from E.F. Hutton, never knew he was dealing with any partnership but West Atlantic; and (7) Hotel Associates didn't even form until December 11, 1986, just six days from the Closing."

(Plaintiff Memo, p. 29).

Initially, this Court concludes that whether the alleged Hotel Associates scheme itself constituted fraud against plaintiff or whether it furthered the alleged fraud, and whether Mahon or any of his co-partners participated in the Hotel Associates scheme, remain fact issues for the jury's resolve.

Furthermore, although this Court concludes that a question of fact exists as to whether Mahon participated in the Hotel Associates scheme, as discussed below, to the extent Mahon's co-partners committed fraud via the Hotel Associates scheme, Mahon could still be liable for his co-partners' fraud even if Mahon engaged in no fraudulent acts.

Therefore, this Court denies Mahon's motion for summary judgment on plaintiff's fraud claim, the sixth claim of the Third Amended Complaint, with respect to the

issue of fraud by virtue of the Hotel Associates scheme.

Lastly, however, even if Mahon committed no fraud, plaintiff argues, Mahon is still liable for the fraud of his co-partners. This Court now addresses this issue.

## D. *Mahon's Liability For The Frauds of His West Atlantic Co–Partner(s)*

As noted above, there is a question of fact as to whether at least Price committed fraud either by concealment, by affirmative misrepresentations, by participation in the Hotel Associates scheme, or by a combination of all three.

Citing New York Partnership Law § 24 ("§ 24"), plaintiff argues that even if Mahon personally engaged in no fraudulent activity, he nonetheless remains liable for the wrongful acts of his co-partners.

§ 24 provides:

Where, by any wrongful act or omission of any partner acting in the ordinary course of the business of the partnership, or with the authority of his copartners, loss or injury is caused to any person, not being a partner in the partnership, or any penalty is incurred, the partnership is liable therefor to the same extent as the partner so acting or omitting to act.

Mahon contends that he is not liable as a West Atlantic general partner for the torts of his co-partners, specifically Price, within § 24 primarily for the following two reasons: 1) Price was not acting "in the course of West Atlantic while he was establishing and operating under the partnership known as Hotel Associates;" and 2) Price began functioning as a partner with Hotel Associates after Mahon's withdrawal from West Atlantic and Mahon cannot, as a matter of law, be liable for torts of his former copartners committed after his withdrawal. (Mahon Reply, pp. 28–29).

First, even if this Court accepted Mahon's argument that Hotel Associates was outside the scope of West Atlantic's business, which this Court does not, this Court has already held that there remains a question of fact as to whether Price committed fraud either by concealment or affirmative misrepresentations. This Court finds that both are alleged to have occurred while Price was acting within the scope of West Atlantic's business and, as already noted, both might constitute separate frauds from the Hotel Associates scheme. Second, in addition to the possibility that Price may have committed fraud apart from the Hotel Associates scheme itself, this Court has already held that the issue of Mahon's withdrawal, if any withdrawal occurred, remains a question of fact. Therefore, this Court cannot conclude what torts were committed, if any, after Mahon's alleged withdrawal.

In conclusion, as to fraud, because this Court finds triable issues of fact regarding Mahon's fraud liability stemming from his own actions and from the actions of his co-partners, this Court denies Mahon's motion for summary judgment on plaintiff's fraud cause of action, the sixth claim of the Third Amended Complaint.[6]

## UNJUST ENRICHMENT (FIFTH CLAIM FOR RELIEF)

In the fifth claim of the Third Amended Complaint, plaintiff alleges that defendants have been unjustly enriched by deriving "substantial benefit" from the Hutton financing and depriving plaintiff of its commission for "arranging and making possible" the Hutton financing. (Third Amended Complaint, ¶¶ 68–70).

Mahon moves for summary judgment on plaintiff's unjust enrichment claim on two grounds. First, Mahon argues that since there "is a valid express agreement between [plaintiff] and West Atlantic covering the same subject matter" targeted in plaintiff's unjust enrichment claim, under *Clark–Fitzpatrick v. Long Island Railroad Company*, 70 N.Y.2d 382, 521 N.Y. S.2d 653, 516 N.E.2d 190 (1987), and previous New York Court of Appeals' holdings on this issue, this Court must grant Mahon summary judgment on plaintiff's unjust enrichment claim. Second, Mahon argues that the statute of frauds, specifically New

---

**6.** This Court denies Mahon's motion for sanc-  tions against plaintiff.

York General Obligations Law § 5–701(a)(10), bars plaintiff's unjust enrichment claim, also mandating its dismissal.

As to the first ground, plaintiff concedes that if there is a valid enforceable contract against Mahon, this Court "would be free to dismiss the unjust enrichment claim against Mahon." (Plaintiff Memo, p. 32). Plaintiff argues, however, that so long as Mahon opposes the breach of contract claims asserting "that no contract is enforceable against him, [plaintiff] is permitted to assert, as an alternative claim, an equitable claim based on unjust enrichment...." (Plaintiff Memo, p. 33).

Mahon responds that he has never argued that no valid contract existed between plaintiff and West Atlantic, at least with respect to the First Agreement; instead Mahon argues that he simply has no liability stemming from any contract between plaintiff and West Atlantic due to his timely withdrawal from West Atlantic. (Mahon, Reply, pp. 30–31). In fact, Mahon argues, nowhere has he disputed the enforceability of the First Agreement.

In *Clark–Fitzpatrick*, the New York Court of Appeals affirmed dismissal of plaintiff's quasi-contract cause of action where plaintiff simultaneously asserted a breach of contract claim covering the identical subject matter. Since recovery in quasi-contract only applied in "the absence of an express agreement," the Court concluded:

> [i]t is impermissible ... to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties.

*Id.*, 70 N.Y.2d at 389, 521 N.Y.S.2d at 656, 516 N.E.2d at 193 (citations omitted).

In this case, by its unjust enrichment claim, plaintiff seeks monies representing its commission fee for allegedly securing the Hotel Project financing—the exact subject matter contracted for between plaintiff and West Atlantic in at least the First Agreement and the sum plaintiff sues for in at least its First Claim for Relief for breach of contract. Plaintiff maintains it has fully performed on the First Agreement thereby entitling it to a brokerage commission under at least the First Agreement. (Third Amended Complaint, ¶ 53). Mahon admits the existence of the First Agreement. (Mahon Answer to Third Amended Complaint, ¶ 18). Moreover, Mahon nowhere disputes the validity of the First Agreement or that agreement's *enforceability* against West Atlantic or its general partners. The issue of Mahon's alleged liability under the First Agreement, which Mahon does contest, is separate from the issues of whether the First Agreement is an otherwise valid and enforceable contract.

This Court concludes that *Clark–Fitzpatrick* controls this issue and, consistent with that opinion, finds that plaintiff's breach of contract claims, as discussed above, are determinative of Mahon's liability to plaintiff as a West Atlantic general partner for the brokerage commission. So long as the existence, validity and enforceability of the First Agreement remain uncontested, and this Court finds such to be the case, plaintiff cannot assert entitlement to a brokerage commission based on simultaneous theories of breach of contract and quasi-contract under New York law.

Although this Court has located at least two recent federal cases from this Circuit relying on *Clark–Fitzpatrick* and allowing the plaintiff to plead breach of contract and unjust enrichment in the alternative, *See, Seiden Associates, Inc. v. ANC Holdings, Inc.*, 754 F.Supp. 37, 39 (S.D.N.Y.1991); *Paper Corp. of U.S. v. Schoeller Technical Papers, Inc.*, 742 F.Supp. 808, 812 (S.D.N.Y.1990), in both these cases the existence of the contract upon which plaintiff predicated its breach of contract claims was disputed. However, in this case, as already discussed, there is no such dispute. Having reached this conclusion, this Court need not address Mahon's statute of frauds argument.

Therefore, this Court grants Mahon's summary judgment motion with respect to plaintiff's unjust enrichment claim, claim five of plaintiff's Third Amended Complaint.

CONCLUSION

For the reasons articulated above: 1) this Court denies Mahon's motion for summary judgment as to plaintiff's breach of contract causes of action, claims one through four of the Third Amended Complaint; 2) this Court also denies Mahon's motion for summary judgment as to plaintiff's fraud cause of action, claim six of the Third Amended Complaint; and 3) this Court grants Mahon's motion for summary judgment as to plaintiff's unjust enrichment cause of action, claim five of the Third Amended Complaint.

ORDER

IT HEREBY IS ORDERED, that defendant Bruce Mahon's Motion For Summary Judgment is DENIED in part and GRANTED in part as follows:

This Court DENIES Mahon's Motion For Summary Judgment as to claims one through four of plaintiff's Third Amended Complaint;

FURTHER, this Court DENIES Mahon's Motion For Summary Judgment as to claim six of plaintiff's Third Amended Complaint; and

FURTHER, this Court GRANTS Mahon's Motion For Summary Judgment as to claim five of plaintiff's Third Amended Complaint.